

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

YENISDEL CONCEPCION CONCEPCION,

Plaintiff,

v.

MARKWAYNE MULLIN, United States Secretary of Homeland Security, et al.,

Defendants.[1]

Case No.:  25-cv-03221-DMS-MMP

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

On November 19, 2025, Plaintiff filed a Complaint with a Motion for a Temporary Restraining Order ("TRO Motion"), seeking a writ of mandamus or other relief compelling agency adjudication of his pending adjustment of status application. (Compl., ECF No. 1). Upon order of the Court, Defendants responded to the TRO Motion and Plaintiff replied. (TRO Opp'n, ECF No. 8; TRO Reply, ECF No. 9). On January 13, 2026, the Court requested a response to the Complaint. (ECF No. 11). Defendants filed a Motion to Dismiss for lack of subject-matter jurisdiction and for failure to state a claim ("Motion"). (ECF Nos. 12, 12-1). Plaintiff filed an Opposition and the Court later vacated oral argument. (Opp'n, ECF No. 13; ECF No. 14). For the following reasons, Defendants'

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Markwayne Mullin is automatically substituted as a party for Kristi Noem.

Motion is denied.

## I.     BACKGROUND

On December 27, 2023, Plaintiff, a native and citizen of Cuba, arrived at the San Ysidro Port of Entry. (Compl. ¶ 1). Upon inspection, Plaintiff was placed in removal proceedings and granted parole, valid through December 25, 2025. (Mot. 2, ECF No. 12-1; Compl. ¶ 1). On January 30, 2025, Plaintiff filed a Form I-485 application to adjust his status under the Cuban Adjustment Act, having met the one-year physical presence requirement. (Compl. ¶ 41). On February 4, 2025, an immigration judge ordered Plaintiff removed from the United States due to a failure to file a timely application for relief or protection from removal. (ECF No. 8-1 at 2–3). Plaintiff's motion to reconsider was subsequently denied. (*Id.* at 5–8). On March 7, 2025, the United States Citizenship and Immigration Services ("USCIS") applied Plaintiff's biometrics to his pending adjustment application. (Compl. ¶ 41). USCIS has not taken any further action on Plaintiff's adjustment application. (*Id.*). On July 22, 2025, Plaintiff filed a motion to reopen his removal proceedings, which was later denied. (ECF No. 8-1 at 10, 12–19). On August 26, 2025, Plaintiff appealed that denial to the Board of Immigration Appeals and that appeal remains pending. (*Id.* at 21–23; Mot. 2). On August 27, 2025, Plaintiff was detained during a scheduled check-in and is currently held at the Otay Mesa Detention Center. (Compl. ¶ 11).

On November 19, 2025, Plaintiff brought this action seeking relief under the Mandamus Act and the Administrative Procedure Act ("APA") to compel USCIS to adjudicate his pending adjustment of status application. (Compl. 13–14). Plaintiff also moved for a temporary restraining order enjoining Defendants from removing him from the United States. (*Id.*). Defendants now seek to dismiss this action, arguing that the combined nature of the Complaint and TRO Motion fails to properly inform them of the claims against which they must defend; that the Court is divested of subject-matter jurisdiction by various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537; that Plaintiff has not alleged a mandatory duty sufficient for a writ

of mandamus or to compel agency action; and that Plaintiff does not plausibly allege unreasonable delay.  (Mot. 3–14).

## II.       LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of an action for lack of subject-matter jurisdiction.  Rule 12(b)(1) jurisdictional challenges can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  The court will then evaluate whether the complaint alleges "sufficient factual matter, accepted as true" to invoke federal court jurisdiction.  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (applying the *Iqbal* standard to a 12(b)(1) jurisdictional challenge).

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss on the grounds that a complaint fails to state a claim upon which relief can be granted.  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts are not "required to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

## III.   DISCUSSION

### A. Subject-Matter Jurisdiction

Defendants argue that Plaintiff's claims are jurisdictionally barred by three subsections of § 1252. (Mot. 4–10). The Court will address each in turn.

#### 1.   Section 1252(g)

Defendants first argue that jurisdiction is barred by § 1252(g), which states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." § 1252(g). Courts interpret this provision narrowly as only applying to challenges to those three discrete actions. *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025). Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999)).

Defendants assert that § 1252(g) bars Plaintiff's claims because the adjudication of his adjustment application is "inextricably linked to the timing of the execution of his final order of removal." (Mot. 5). Plaintiff contends that he is not challenging the validity of the removal order but rather inaction by a separate agency and that any effect on the timing of his removal is merely incidental. (Opp'n 3–4). Defendants are correct that to the extent Plaintiff seeks an order enjoining his removal, jurisdiction is barred by § 1252(g). (Mot.

5; Compl. ¶ 13); *see Poghosyan v. U.S. Dep't of Homeland Sec.*, No. 2:25-cv-03091-SB-ADS, 2025 WL 1287771, at *3–5 (C.D. Cal. May 1, 2025) (finding § 1252(g) barred jurisdiction over plaintiff's request to enjoin removal until USCIS had adjudicated his application); *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) ("The discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" (citation modified)); *Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019) (affirming dismissal on § 1252(g) grounds where the "decision whether to remove aliens subject to valid removal orders who ha[d] applied for U-visas [was] entirely within the Attorney General's discretion"). However, Plaintiff's Mandamus Act and APA claims present a different question.

Section 1252(g) is narrow and does not "sweep[] in any claim that can technically be said to arise from the three listed actions." *Ibarra-Perez*, 154 F.4th at 996 (citation modified). Rather, the provision "refers to just those three specific actions themselves." *Id.* (citation modified); *see United States v. Hovsepian*, 359 F.3d 1144, 1155–56 (9th Cir. 2004) (en banc) (confirming § 1252(g) does not bar review of "a purely legal question that does not challenge the Attorney General's discretionary authority"). In this action, Plaintiff's underlying claims do not challenge the execution of his removal order, but rather USCIS's failure to adjudicate an application over which it has exclusive jurisdiction. (Compl. ¶¶ 50–61). Nor do Plaintiff's claims challenge the Attorney General's decision or action to commence proceedings or adjudicate a case. The duty to adjudicate Plaintiff's adjustment application would exist regardless of whether removal proceedings were ever initiated at all. *See infra* Section III.C. To hold otherwise would render § 1252(g) a general jurisdictional bar, a reading the Supreme Court has rejected. *Reno*, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Accordingly, § 1252(g) does not deprive this Court of jurisdiction over Plaintiff's Mandamus Act and APA claims.

2. Section 1252(b)(9)

Defendants next argue that jurisdiction is barred by § 1252(b)(9), which channels judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" into a petition for review of a final removal order filed with the appropriate circuit court. § 1252(a)(5), (b)(9); *Reno*, 525 U.S. at 483 (characterizing the provision as an "unmistakable 'zipper' clause"). The Ninth Circuit has described § 1252(b)(9) as "breathtaking in scope and vise-like in grip . . . swallow[ing] up virtually all claims that are tied to removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (citation modified). However, the provision has "built-in limits" because it "channel[s] only those questions 'arising from any action taken or proceeding brought to remove an alien' . . . Accordingly, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Id.* at 1032 (quoting § 1252(b)(9)); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("[Section] 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citation modified)). Although the "'arising from' language appears broad, [] the Supreme Court has cautioned against an 'expansive' interpretation of § 1252(b)(9) that would lead to 'absurd' results and make certain claims 'effectively unreviewable.'" *Ibarra-Perez*, 154 F.4th at 1000 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018)).

Here, Defendants argue that Plaintiff's claims are barred by § 1252(b)(9) because they constitute a "direct and indirect challenge to his removal order." (Mot. 7).[2] The Court disagrees. Plaintiff's Mandamus Act and APA claims challenge USCIS's failure to adjudicate a pending Form I-485 application—not the validity or execution of his removal

---

[2] Defendants cite two decisions from other circuits in support of this proposition. (Mot. 7 (citing *Momin v. Jaddou*, 113 F.4th 552, 558 (5th Cir. 2024); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011))). However, those cases were not decided on § 1252(b)(9) grounds and involved the actual denial of relief. *See Momin*, 113 F.4th at 556, 558; *Delgado*, 643 F.3d at 54, 55.

25-cv-03221-DMS-MMP

order.[3]   Furthermore, this matter could not have been addressed in Plaintiff's removal proceedings at all.   Ordinarily, immigration judges have jurisdiction to adjudicate adjustment applications.  8 C.F.R. § 1245.2(a)(1)(i) (2026).  However, when the applicant is "an arriving alien who is placed in removal proceedings," USCIS has exclusive jurisdiction.  *Id.* §§ 1245.2(a)(1)(ii), 245.2(a)(1); (*see* Compl. ¶ 5).  Therefore, Plaintiff's claims do not arise from removal proceedings under § 1252(b)(9) because the duty he seeks to enforce was never a part of those proceedings and in fact could not have been addressed within them.  *See J.E.F.M.*, 837 F.3d at 1032 (citing *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007)) (noting that § 1252(b)(9) did not bar claim that "could not have been raised before the agency" and for which there was no other "legal avenue to obtain judicial review"); *cf. Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022) (finding § 1252(b)(9) did not bar challenge to USCIS jurisdictional determination where it "ha[d] no bearing on the validity of the deportation orders"); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257 (11th Cir. 2020) (finding § 1252(b)(9) did not bar challenge to USCIS visa denial where there was no challenge to the removal proceedings and thus, "the zipper clause's channeling function ha[d] no role to play").  That Plaintiff's removal order may create a practical urgency for USCIS to act does not transform the claim into one "arising from" his removal proceedings.  Finally, barring review here would render Plaintiff's claims "effectively unreviewable"—a result the Supreme Court expressly cautioned against.  *Jennings v. Rodriguez*, 583 U.S. at 293.  Accordingly, § 1252(b)(9) does not strip this Court of jurisdiction over Plaintiff's claims.

### 3.  Section 1252(a)(2)(B)(ii)

Defendants finally argue that jurisdiction is barred by § 1252(a)(2)(B)(ii), which states "no court shall have jurisdiction to review . . . any other decision or action of the

---

[3] The Court agrees with Defendants' reading of "the TRO motion as seeking relief in the form of a stay of [Plaintiff's] removal." (Mot. 4; *see* Compl. at 13).  As discussed previously, to the extent that Plaintiff is requesting injunctive relief to prevent his removal, that request is denied for lack of jurisdiction.

Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." § 1252(a)(2)(B)(ii). This provision "bars judicial review of decisions 'made discretionary by *legislation*.'" *Bouarfa v. Mayorkas*, 604 U.S. 6, 17 (2024) (quoting *Kucana v. Holder*, 558 U.S. 233, 246–47 (2010)). The Ninth Circuit has long applied the same principle—that § 1252(a)(2)(B)(ii) "refers not to 'discretionary decisions,' . . . but to acts the *authority* for which is *specified* under the INA to be discretionary." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003); *see Perez Perez v. Wolf*, 943 F.3d 853, 866 (9th Cir. 2019) (observing that *Kucana* reinforced the *Spencer* interpretation of § 1252(a)(2)(B)(ii)); *see also Chairez v. Mayorkas*, 168 F.4th 1227, 1234–35 (9th Cir. 2026) (eliminating inquiry into whether language guiding the exercise of discretion restores jurisdiction under § 1252(a)(2)(B)(ii).

Defendants assert that judicial review is precluded here because the decisions at issue are the result of discretion to adjust the status of noncitizens. (Mot. 7–10).[4] The source of that discretion is § 1255(a) which allows the Secretary of Homeland Security to adjust a noncitizen's status "in [their] discretion and under such regulations as [they] may

---

[4] Defendants additionally argue that the delay on Plaintiff's application is related to national security and as such, "the Court should defer to the agency's expertise and ongoing review." (Mot. 12–13). However, none of the cases cited support "the broad proposition that all administrative decisions implicating national security are beyond the reach of judicial review." *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *10 n.14 (D. Mass. Apr. 30, 2026); *see Dep't of the Navy v. Egan*, 484 U.S. 518, 520 (1988) ("The narrow question presented by this case is whether the Merit Systems Protection Board [] has authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action."); *Ameziane v. Obama*, 699 F.3d 488, 493 (D.C. Cir. 2012) ("All that is at issue in this appeal, is whether [Appellee] may publicly disclose that he has been approved for transfer from Guantanamo by the Task Force." (citation modified)); *Orlov v. Howard*, 523 F. Supp. 2d 30, 32 (D.D.C. 2007) ("[U]pon receipt and analysis of the results of the pending security checks, USCIS will continue to review [Plaintiff's] adjustment application and complete its adjudication as expeditiously as possible under the circumstances."). As "none [of these cases] comes close to suggesting that this Court should decline to review alleged violations of statutes passed by Congress," Defendants' argument is unpersuasive. *Abdulraheemzai v. Noem*, No. 25-cv-05098-JST, 2026 WL 1113722, at *5 (N.D. Cal. Apr. 24, 2026); *see Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 WL 1031079, at *11, 15–16 (N.D. Cal. Apr. 16, 2026).

25-cv-03221-DMS-MMP

prescribe," so long as the noncitizen applied, is eligible for an immigrant visa and admissible, and there is a visa immediately available to them upon filing. § 1255(a); *see* 6 U.S.C. § 557 (noting certain statutory references to the Attorney General now refer to the Secretary of Homeland Security). Defendants argue that there is a growing circuit consensus finding the pace of adjudication to be discretionary within the meaning of § 1252(a)(2)(B)(ii) such that related claims are shielded from review. (Mot. 9–10); *see Kale v. Alfonso-Royals*, 139 F.4th 329, 334–36 (4th Cir. 2025) (holding that § 1252(a)(2)(B)(ii) barred jurisdiction over challenge to USCIS adjudication delay); *Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1306–09 (11th Cir. 2025) (same); *Geda v. Dir. USCIS*, 126 F.4th 835, 842–47 (3d Cir. 2025) (same); *Cheejati v. Blinken*, 106 F.4th 388, 393–97 (5th Cir. 2024) (same); *Thigulla v. Jaddou*, 94 F.4th 770, 773–78 (8th Cir. 2024) (same). Defendants point to Ninth Circuit case law suggesting a broad interpretation of § 1252(a)(2)(B)(ii) as evidence it is likely to follow this consensus. (Mot. 8–10).[5]

To assess whether § 1252(a)(2)(B)(ii) applies here, the Court must first examine the source of the delay on Plaintiff's application. Defendants concede that "there is currently a hold on adjudications of Form I-485s for individuals from Cuba" which they attribute to a presidential proclamation. (Mot. 12). Plaintiff more specifically points to a USCIS policy memorandum as the source of the hold. (Opp'n 7). In fact, the precise chain of events begins on January 20, 2025, with the President's issuance of Executive Order 14161.

---

[5] *See, e.g.*, *Babaria v. Blinken*, 87 F.4th 963, 977 (9th Cir. 2023) (recognizing that § 1255(a) "vests the government with considerable leeway in establishing the process" for adjusting a noncitizen's status); *Chairez*, 168 F.4th at 1232 (reasoning that Congress's "explicit and expansive jurisdiction-stripping wording in § 1252(a)(2)(B)(ii)" clearly indicates its "intent to preclude most judicial review 'in the discretionary-relief context'" (quoting *Patel v. Garland*, 596 U.S. 328, 347 (2022))); *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024) (reading "any other decision or action expansively to cover all determinations made in support of a grant of discretionary relief under subsection (ii)" (citation modified)); *Garcia v. USCIS*, 146 F.4th 743, 754 (9th Cir. 2025) (noting that the language of adjacent provision § 1252(a)(2)(B)(i) evidences "Congress's intent to strictly circumscribe the jurisdiction of federal courts over cases involving adjustment of immigration status" (quoting *Abuzeid v. Mayorkas*, 62 F.4th 578, 585 (D.C. Cir. 2023))); *Nakka v. USCIS*, 111 F.4th 995, 1016 n.20 (9th Cir. 2024) (noting the court's interpretation of § 1252(a)(2)(B)(i) did not conflict with *Thigulla*, 94 F.4th at 777, or *Cheejati*, 106 F.4th at 397). *But see infra* note 7.

*See* Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025). The Executive Order directed the Secretary of State, in coordination with the Attorney General, Secretary of Homeland Security, and Director of National Intelligence, to "vet and screen to the maximum degree possible all aliens who intend to be admitted, enter, or are already inside the United States, particularly those aliens coming from regions or nations with identified security risks." *Id.* § 2(a)(iv). Among other measures, it also required the four officials to jointly submit a report within 60 days "identifying countries throughout the world for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries pursuant to [§ 1182(f)]." *Id.* § 2(b). Following submission of the report, the President issued Proclamation 10949 on June 4, 2025, entitled "Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 24497 (June 4, 2025) [hereinafter Proclamation 10949]. Invoking the President's authority under § 1182(f), § 1185(a), and 3 U.S.C. § 301, the Proclamation partially or fully suspended the entry of foreign nationals from nineteen countries. *Id.* It further directed the Secretary of State, in consultation with the three other agency heads, to submit a report within 90 days, and every 180 days thereafter, recommending whether specific restrictions "should be continued, terminated, modified, or supplemented." *Id.* § 5(a).

On November 27, 2025, USCIS announced that it would take additional national security measures "[i]n the wake of the shooting of two National Guard service members in Washington, D.C., [] by an Afghan national." *USCIS Implements Additional National Security Measures in the Wake of National Guard Shooting by Afghan National*, U.S. Citizenship & Immigr. Servs. (Nov. 27, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-implements-additional-national-security-measures-in-the-wake-of-national-guard-shooting-by [https://perma.cc/H95K-GRH7]. In a corresponding policy alert, the agency announced it would update the USCIS Policy Manual to "consider[] any relevant country-specific factors such as those specified in [Proclamation] 10949 as significant negative factors in the adjudication of discretionary benefit requests." U.S. Citizenship &

Immigr. Servs., PA-2025-26, Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits 2 (2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20251127-Discretion.pdf [https://perma.cc/NV6G-ZQTS].  A few days later on December 2, 2025, USCIS issued the policy memorandum identified by Plaintiff as the source of the hold on his application.  U.S. Citizenship & Immigr. Servs., PM-602-0192, Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries (2025) [hereinafter PM-602-0192], https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-Pending ApplicationsHighRiskCountries-20251202.pdf [https://perma.cc/3PES-H9AE].  PM-602-0192 placed a hold on all pending benefit applications for individuals from the nineteen countries subject to restrictions in Proclamation 10949, including Cuba.  *Id.* at 1; *see* Proclamation 10949 §§ 1(g), 3(b).  It further instructed agency personnel to conduct "a comprehensive re-review" of approved benefit applications for individuals from the nineteen countries who entered after January 20, 2021.  PM-602-0192 at 1.  Finally, it placed a hold on all asylum or withholding of removal applications, regardless of nationality.  *Id.*  The stated purpose of these measures was to allow the agency to "address vulnerabilities" and "conduct a comprehensive review of all policies, procedures, and guidance" in light of national security and public safety concerns.  *Id.* at 2.  PM-602-0192 stipulated that "[w]ithin 90 days of issuance of [the] memorandum, USCIS [would] prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and . . . issue operational guidance."  *Id.* at 3.  However, the hold would "remain in effect until lifted by the USCIS Director through a subsequent memorandum."  *Id.* at 2–3.  On December 16, 2025, the President issued a second proclamation, expanding entry restrictions to cover a total of thirty-nine countries and narrowing previous categorical exceptions.  Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025).  On January 1, 2026, USCIS issued PM-602-0194 which extended the hold policy to the full thirty-nine countries now subject to entry restrictions.  U.S. Citizenship & Immigr. Servs., PM-602-0194, Hold and Review of USCIS Benefit

11

Applications Filed by Aliens from Additional High-Risk Countries (2025) [hereinafter PM-602-0194], https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf [https://perma.cc/PQ9H-ECXX]. PM-602-0194 further defined "hold" as "allow[ing] a case to proceed through processing, up to final adjudication" without "a final decision on a case, such as an approval, denial, or dismissal." *Id.* at 1 n.2. It created new exceptions but otherwise contained the same 90-days and remain-in-effect provisions as PM-602-0192.

On March 30, 2026, USCIS announced that "[t]hrough an ongoing comprehensive review" it had "ascertained that prior screening and vetting measures were wholly inadequate" and that in response the agency was "developing a layered vetting plan." *Update on USCIS' Strengthened Screening and Vetting*, U.S. Citizenship & Immigr. Servs. (Apr. 30, 2026) [hereinafter March Update], https://www.uscis.gov/newsroom/alerts/update-on-uscis-strengthened-screening-and-vetting [https://perma.cc/MQ4N-N36W] (issued on March 30 but updated on April 30 to include ", and applications associated with medical physicians"). The announcement stated that the hold had been lifted for asylum seekers from countries without entry restrictions, as well as for other discrete groups. *Id.* It further specified that the agency had "established an internal process for lifting holds on individual or group cases" and would "continue to review all application types and lift holds for both individual and group cases as appropriate." *Id.* However, it appears that the original hold remains in place. *See Doe v. Trump*, 2026 WL 1170971, at *4 ("[N]otwithstanding the representations in PM 602-0192 and PM 602-0194 that USCIS would 'issue operational guidance' by March 2, 2026 and April 1, 2026, respectively, USCIS has made no meaningful change to the adjudicative hold affecting the plaintiffs' benefit applications.").

Thus, the question at issue here is "whether the authority [for the hold] is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, in the sense required to trigger § 1252(a)(2)(B)(ii)." *Perez Perez*, 943 F.3d at 866; *see Kucana*, 558 U.S. at 242–43 n.10 (explaining that the authority must be "specified—not

merely assumed or contemplated . . . implied or anticipated." (citation modified)).  To identify the authority for the hold, the Court first looks to the sources cited by the policy memoranda themselves.  *Cf. Calcutt v. FDIC*, 598 U.S. 623, 624 (2023) ("It is a simple but fundamental rule of administrative law that reviewing courts must judge the propriety of agency action solely by the grounds invoked by the agency" (citation modified)); *Nat. Grocers v. Rollins*, 157 F.4th 1143, 1160 (9th Cir. 2025) ("We may uphold an exercise of agency discretion *only* on the same basis articulated in the order by the agency itself." (citation modified)).  Many of the authorities cited throughout the policy memoranda do not fall "under this subchapter" and thus cannot trigger § 1252(a)(2)(B)(ii) in any event.  *See Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019) (identifying "the relevant subchapter" as "8 U.S.C. §§ 1151–1382"); PM-602-0192 *passim* (citing Executive Order 14161, Proclamation 10949, DHS Delegation of Authority 0150.1, § 1101(a)(43)); PM-602-0194 *passim* (citing Executive Order 14161, Proclamation 10949, Proclamation 10998, DHS Delegation of Authority 0150.1, § 1101(a)(3), § 1101(a)(43), 8 C.F.R. § 274a.12).  The policy memoranda do cite to § 1182(f) in the context of the proclamations, although it is unclear whether the agency relies on this subsection as authority for the hold.  PM-602-0192 at 1 n.1; PM-602-0194 at 1 n.1; *see* March Update (describing the policy memoranda as issued "[i]n accordance with relevant executive orders and presidential proclamations"); (Mot. 12 (linking Proclamation 10949 to the "hold on adjudications")).  Regardless, § 1182(f) cannot trigger the jurisdictional bar because it authorizes "the *President*" to "suspend or restrict the entry of aliens" and thus does not specify any authority "to be in the discretion of the *Attorney General* or the *Secretary of Homeland Security*."  § 1182(f) (emphasis added); *Trump v. Hawaii*, 585 U.S. 667, 683 (2018); § 1252(a)(2)(B)(ii) (emphasis added); *cf. E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 773 (9th Cir. 2018) (finding an asylum rule not to be an exercise of § 1182(f) where it did not suspend or restrict entry and instead dealt with those already physically present in the United States); *Doe v. Trump*, 2026 WL 1170971, at *16 (finding § 1182(f) to be "inapposite where, as here, the challenged policy concerns domestic processing of benefit

25-cv-03221-DMS-MMP

applications by noncitizens already admitted into the United States"); *Behdin*, 2026 WL 1031079, at *21 ("[T]he adjudicatory hold extends far beyond [§ 1182(f)] because it applies to nearly all pending benefit requests from applicants . . . who have already been admitted to and living the United States for an extended period." (emphasis omitted)).

The policy memoranda also cite to various provisions of § 1182 and § 1227 which concern determinations of admissibility and deportability. PM-602-0192 at 1 n.7, 3 (citing § 1182(a)(1)(A)(iii), (a)(2), (a)(3)(A), (a)(3)(B), (a)(3)(F), and § 1227(a)(2), (a)(4)(A), (a)(4)(B)); PM-602-0194 at 3 (same). However, these provisions are not discretionary within the meaning of § 1252(a)(2)(B)(ii). *See Vega v. USCIS*, 65 F.4th 469, 472 (9th Cir. 2023) (listing examples of discretionary determinations shielded by § 1252(a)(2)(B)(ii) including some from § 1182 but none that were cited by the policy memoranda); *Kucana*, 558 U.S. at 248 (same). Even if the referenced subsections were discretionary, a blanket hold on adjudication would exceed the scope of that discretion and be contrary to "Congress's individualized approach for determining admissibility." *Trump v. Hawaii*, 585 U.S. at 689, 695 ("Section 1182 defines the pool of individuals who are admissible to the United States."); *see Pacito v. Trump*, 169 F.4th 895, 909 (9th Cir. 2026) (describing § 1182(a)(1)–(10) as "defining classes of aliens ineligible for visas or admission" (citation modified)); *City of San Francisco v. USCIS*, 944 F.3d 773, 781 (9th Cir. 2019) (describing § 1182(a)(1)–(10) as "list[ing] the grounds on which an alien may be adjudged inadmissible"); *see also Bouarfa*, 604 U.S. at 15 (observing that there is discretion to adjust status under § 1255(a) "only [after] first confirm[ing] that certain preconditions have been satisfied"). Therefore, none of the sources of authority cited in the policy memoranda trigger § 1252(a)(2)(B)(ii).

Defendants instead invoke the discretion to adjust status and argue that "decision making under [§ 1255(a)] is discretionary," including "the timing of adjudication of an adjustment of status application—or the pace at which adjudication occurs." (Mot. 7, 9). In support, Defendants cite five circuit cases which found § 1252(a)(2)(B)(ii) stripped them of jurisdiction over pace-of-adjudication claims. (Mot. 9, 9 n.2). However, those cases

involved a different policy from the one at issue here. *Kale*, 139 F.4th at 331; *Kanapuram*, 131 F.4th at 1307; *Geda*, 126 F.4th at 838; *Cheejati*, 106 F.4th at 390; *Thigulla*, 94 F.4th at 772. That policy, which the Court will refer to as the retrogression hold policy, is a longstanding approach to issues of visa supply and demand. *See generally Kale*, 139 F.4th at 331 (referring to this approach as the "adjudication hold policy"); *Gupta v. Jaddou*, 118 F.4th 475, 483 (1st Cir. 2024) (referring to this approach as the "abeyance policy"). The adjustment of status process was created in 1952 to allow noncitizens already in the country to "acquire immigrant status" without leaving "to secure an appropriate visa" at a "U.S. consular office[] abroad." *Landin-Molina v. Holder*, 580 F.3d 913, 915–16 (9th Cir. 2009). As such, adjustment of status still requires getting a visa, many of which are subject to caps set by Congress. *See* § 1255(b) (requiring the Secretary of State to "reduce by one" the number of authorized visas in a capped category whenever an adjustment application is approved); § 1151 (setting caps for certain visa categories); § 1153 (allocating those caps by preference category); § 1152(a)(2) (specifying that for family-sponsored and employment-based visas, no country may receive more than seven percent of available visas within a fiscal year). The adjustment of status process typically begins with the filing of a petition or certification which gives the prospective applicant a "'priority date' marking [their] place in the queue." *Babaria*, 87 F.4th at 974. To track visa availability, the State Department publishes a monthly Visa Bulletin which either states that visas are currently available for a given preference category or lists a final action date indicating that anyone with an earlier priority date may now apply. *Id.* ("Put differently, the State Department projects that a visa will be immediately available to any immigrant with a priority date earlier than the published final action date."); § 1255(a)(3) (requiring a visa be immediately available at the time of filing an application); 8 C.F.R. § 245.1(g)(1) (2026) (same). *See generally The Visa Bulletin*, U.S. Dep't of State, https://travel.state.gov

15

/content/travel/en/legal/visa-law0/visa-bulletin.html.[6]   However, final action dates "are only estimates" of visa availability and "must [be] revise[d] . . . when the circumstances change" "such as when demand for immigrant visas in other preference categories and by applicants from other countries is greater than projected." *Babaria*, 87 F.4th at 972, 974. This can result in final action dates being moved backwards in time, which is what is known as retrogression. *Id.* at 974.   Thus, "[a]n immigrant visa that is available when the noncitizen applies to adjust status can become unavailable by the time the application is processed and ready to be approved." *Babaria*, 87 F.4th at 972.  As agency regulations require that "an immigrant visa number [be] allocated" before an application can be approved, under the retrogression hold policy, USCIS holds the affected application "in abeyance until a visa once again becomes available."  § 245.2(a)(5)(ii) (2026); *Visa Retrogression*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card /green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression [https://perma.cc/UME7-U763]; *see* USCIS Policy Manual vol. 7, pt. A, ch. 6(C)(5), https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 [https://perma.cc/4TBS-BUYJ].  Otherwise, the agency would have to "deny [] applications outright and require [applicants] to refile once their priority dates became current." *Kale*, 139 F.4th at 333, 335 ("Having an application held in abeyance triggers eligibility to apply for other benefits, similar to those provided by permanent residence.").  It was this hold policy at issue in the circuit cases; however, for the following reasons, a different jurisdictional result is appropriate here.

---

[6] USCIS sometimes allows noncitizens to file applications early based on the "Dates for Filing Applications" chart in the Visa Bulletin.  U.S. Citizenship & Immigr. Servs., Policy Manual vol. 7, pt. A, ch. 3 (2026) [hereinafter USCIS Policy Manual], https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-3 [https://perma.cc/7ZGB-7N32]; *see Adjustment of Status Filing Charts from the Visa Bulletin*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/adjustment-of-status-filing-charts-from-the-visa-bulletin.

As a preliminary matter, the Ninth Circuit has not yet addressed whether § 1252(a)(2)(B)(ii) bars jurisdiction over pace-of-adjudication claims.[7] However, even if it had, Defendants' argument that the retrogression hold policy cases stand for the "general principle that section 1252(a)(2)(B)(ii) bars judicial review of USCIS's decision to impose an adjudication hold" is unavailing. *Behdin*, 2026 WL 1031079, at *10. As many district courts have recently noted, that policy bears little resemblance to the hold at issue here. *See Doe v. Trump,* 2026 WL 1170971, at *8–10; *Meschi v. Edlow*, No. 26-cv-01993-AGT, 2026 WL 1157151, at *1 (N.D. Cal. Apr. 29, 2026); *Saghafi v. Edlow*, No. GLR-26-100, 2026 WL 1127468, at *4–5 (D. Md. Apr. 24, 2026); *Behdin*, 2026 WL 1031079, at *6–9; *Bowser v. Noem*, No. 26-CV-10382-AK, 2026 WL 555624, at *3–5 (D. Mass. Feb. 27, 2026); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *7–10 (N.D. Cal. Feb. 20, 2026); *cf. Bahaduri v. Noem*, No. 1:25-cv-1297, 2026 WL 878687, at *3–7 (W.D. Mich. Mar. 31, 2026) (regarding the asylum hold). This is because unlike the retrogression

[7] As Defendants acknowledge, district courts within the Ninth Circuit are divided as to whether § 1252(a)(2)(B)(ii) bars pace of adjudication claims. (Mot. 9–10). A majority of district courts to consider the question post-*Kucana* have found jurisdiction. *See Pimpalkhute v. Edlow*, No. 25-cv-2433-BJR, 2026 WL 1283512, at *3–4 (W.D. Wash. May 11, 2026) (I-485 applications); *Subramanyan v. Selby*, No. 8:26-CV-00113-DFM, 2026 WL 1196250, at *2–3 (C.D. Cal. Apr. 27, 2026) (I-485 applications); *Komma v. Edlow*, No. 2:25-cv-3702 DJC AC PS, 2026 WL 1113887, at *3 (E.D. Cal. Apr. 24, 2026) (I-485 applications); *Narayan v. Edlow*, No. 25-cv-11000-SVK, 2026 WL 1050227, at *1 (N.D. Cal. Apr. 16, 2026) (I-485 applications); *Wang v. Edlow*, No. 25-cv-10689-SVK, 2026 WL 1021204, at *4–5 (N.D. Cal. Apr. 15, 2026) (I-485 applications); *Gao v. Mullin*, No. 25-cv-01479-SVK, 2026 WL 948665, at *3–5 (N.D. Cal. Apr. 8, 2026) (I-485 application); *Nor v. Scott*, No. 2:25-cv-02841-SSC, 2026 WL 529643, at *4 (C.D. Cal. Feb. 20, 2026) (DS-160 application); *Siddiqi v. Bondi*, No. 2:24-cv-10528-CBM-AJR, 2025 WL 2412152, at *2–3 (C.D. Cal. June 24, 2025) (parole application); *Reyes v. Miller*, No. 4:23-cv-5121-EFS, 2024 WL 2947716, at *5 (E.D. Wash. June 11, 2024) (I-601 application); *Gonzalez v. Paul*, No. 3:20-cv-00971-AC, 2021 WL 6119256, at *8 (D. Or. Apr. 8, 2021) (I-918 application); *CRVQ v. USCIS*, No. CV 19-8566-CBM-(AGRx), 2020 WL 8994098, at *3 (C.D. Cal. Sept. 24, 2020) (EAD application); *A.C.C.S. v. Nielsen*, No. CV 18-10759-DMG (MRWx), 2019 WL 7841860, at *9 (C.D. Cal. Sept. 17, 2019) (EAD applications); *Doe v. Risch*, 398 F. Supp. 3d 647, 655 (N.D. Cal. 2019) (I-730 application); *Jamal v. Johnson*, No. 2:15-cv-08088-ODW-AFM, 2016 WL 4374773, at *4 (C.D. Cal. Aug. 15, 2016) (I-485 application); *Asmai v. Johnson*, 182 F. Supp. 3d 1086, 1093 (E.D. Cal. 2016) (I-485 application); *Tufail v. Neufeld*, No. 2:14-cv-02545-TLN-CMK, 2016 WL 1587218, at *4 (E.D. Cal. Apr. 20, 2016) (I-485 application); *Dehrizi v. Johnson*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *5 (D. Ariz. Jan. 21, 2016) (I-485 application); *Latifi v. Neufeld*, No. 13-cv-05337-BLF, 2015 WL 3657860,

hold policy, the current hold is not based on longstanding practice, grounded in regulations, individualized, subject to a condition precedent, of finite duration, or part of the adjudicative process. The Court will address each of these distinctions in turn.

First, the retrogression hold policy "comports with longstanding policy" as a visa has been required prior to application approval for more than sixty years. *Babaria*, 87 F.4th at 972, 979 (citing 30 Fed. Reg. 14772, 14778 (Nov. 30, 1965)). By contrast, the hold here took effect on December 2, 2025, and Defendants have not identified a comparable predecessor. Furthermore, the policy has "different statutory and regulatory underpinnings than USCIS's new policy of holding final adjudication of certain

---

at *3 (N.D. Cal. June 12, 2015) (I-485 application); *Khan v. Johnson*, 65 F. Supp. 3d 918, 924–25 (C.D. Cal. 2014) (I-485 applications); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014) (I-485 application); *Singh v. Napolitano*, 909 F. Supp. 2d 1164, 1169–70 (E.D. Cal. 2012) (I-485 application); *Beyene v. Napolitano*, No. C 12-01149 WHA, 2012 WL 2911838, at *3 (N.D. Cal. July 13, 2012) (I-485 application); *Tewolde v. Wiles*, No. C11-1077JLR, 2012 WL 750542, at *3 (W.D. Wash. Mar. 7, 2012) (I-485 application); *Mugomoke v. Curda*, No. 2:10-CV-02166 KJM DAD, 2012 WL 113800, at *4 (E.D. Cal. Jan. 13, 2012) (I-485 application); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *3 (N.D. Cal. May 25, 2011) (I-485 application); *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010) (I-485 application); *Sultan v. Roark*, No. 2:09-cv-02158-GEB-EFB, 2010 WL 1992195, at *4 (E.D. Cal. May 13, 2010) (I-485 applications). *But see Akunuri v. Tarango*, No. 8:25-cv-02792-KES, 2026 WL 1270770, at *2 (C.D. Cal. May 5, 2026) (I-485 applications); *Rapaku v. Tarango*, No. 8:26-cv-00163-KES, 2026 WL 1270766, at *3 (C.D. Cal. May 5, 2026) (I-485 applications); *Handel v. Edlow*, No. 1:25-CV-00584-HBK, 2026 WL 84339, at *4 (E.D. Cal. Jan. 12, 2026) (I-601 waiver application); *Lu v. USCIS*, No. 2:25-cv-01581-CDS-BNW, 2025 WL 3707605, at *2 (D. Nev. Dec. 19, 2025) (I-130 and I-131 applications); *Ortega v. Miller*, No. 1:25-CV-03066-MKD, 2025 WL 3006746, at *2–3 (E.D. Wash. Oct. 27, 2025) (I-601 waiver application); *Khachutorov v. Britten*, 792 F. Supp. 3d 1106, 1112–15 (C.D. Cal. 2025) (I-485, I-131, and I-765 applications); *Gonzalez v. DHS*, 500 F. Supp. 3d 1115, 1123–24 (E.D. Cal. 2020) (EAD application); *Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007, 1010–15 (S.D. Cal. 2017) (I-485 application); *Chiriac v. Holder*, No. CV 12-6545 DSF (CWX), 2012 WL 12903620, at *2 (C.D. Cal. Aug. 17, 2012) (I-485 application); *Paz v. USCIS*, No. CV 12-1807 DSF (CWx), 2012 WL 12896200, at *1 (C.D. Cal. Mar. 22, 2012) (I-485 application). *See generally Kucana*, 558 U.S. 233 (construing § 1252(a)(2)(B)(ii) to only bar decisions made discretionary by statute); *Lovo v. Miller*, 107 F.4th 199, 209–10 (4th Cir. 2024) (citing *Patel v. Garland*, 596 U.S. 328) (rejecting the argument that *Patel* changed the landscape such that "decision or action" would now include "inaction" in the context of § 1182(a)(9)(B)(v)). Additionally, the Court has examined every available pre-*Kucana* decision on this issue by district courts within the Ninth Circuit. Having done so, the Court agrees that the "clear" and "overwhelming majority" found that § 1252(a)(2)(B)(ii) did not bar jurisdiction over pace of adjudication claims. *Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1257 (W.D. Wash. 2008); *Hassane*, 2010 WL 2425993, at *3.

applications." *Varniab*, 2026 WL 485490, at *8. The requirement that a visa be available upon approval was promulgated through a regulation which "reasonably fill[ed] in a procedural detail left open by Congress" and has "tacit legislative approval" due to "Congress's longstanding silence" about it. *Babaria*, 87 F.4th at 979 (citing § 245.2(a)(5)(ii)). Whereas here, "Defendants have not identified any analogous statute or regulation that specifically authorizes the adjudication hold." *Varniab*, 2026 WL 485490, at *8; *see Doe v. Trump*, 2026 WL 1170971, at *9 (noting that the current hold was "not promulgated [through] regulations that underwent notice-and-comment rulemaking"). This distinction is particularly significant as the circuit cases located discretion for the retrogression hold policy in the "under such regulations as [they] may prescribe" clause. § 1255(a); *Doe v. Trump*, 2026 WL 1170971, at *9 ("These courts reason . . . the retrogression policy, embodied in USCIS's regulations, is the exercise of that discretion conferred by Congress.").

The retrogression hold policy and the hold at issue here differ in another critical respect. While the former operates on an individual basis resuming adjudication once a visa is available, the latter applies categorically based on an applicant's country of origin. The case-by-case framing in the policy memoranda does not change this conclusion. *Contrast* PM-602-0192 at 1 ("An individualized, case-by-case review and assessment will be done of all relevant information and facts."), *and* PM-602-0194 at 3 ("USCIS will conduct a thorough review on a case-by-case basis to assess benefit eligibility . . . ."), *with* PM-602-0194 at 1 n.5 ("This applies to aliens who list one of the high-risk countries as their Country of Birth or Country of Citizenship."), *and* PM-602-0194 at 3 ("To address potential vulnerabilities, USCIS will place an adjudicative hold on all pending benefit requests submitted by or for aliens from the high-risk countries . . . , allowing for a thorough case-by-case review."). Neither does the later addition of exceptions nor the update that USCIS "continue[s] to review all application types and lift holds for both individual and group cases as appropriate." March Update; *see* PM-602-0194 at 4–5 (establishing exceptions). There is also no suggestion that all affected applicants fail to meet specific

requirements. *Cf. A.M.S. v. Edlow*, No. 25-476 (RDM), 2026 WL 850779, at *1, 12 (D.D.C. Mar. 27, 2026) (concluding the deprioritization of humanitarian parole applications from Afghanistan was discretionary where "USCIS could not complete processing those applications—which requires fingerprinting, medical assessments, and in-person vetting—without an embassy or consulate" in the country). In short, the hold here is triggered automatically by nationality, not by an individualized finding of ineligibility, inadmissibility, or failure to meet some other prerequisite. *See Behdin*, 2026 WL 1031079, at *10 ("An additional, overarching problem with Defendant's jurisdiction-stripping argument is that numerous courts have recently concluded that subsection (B)(ii) only precludes judicial review of decisions denying discretionary relief on individual applications and does not preclude judicial review of the Government's decision to categorically act or withhold action."); *cf. Beshir v. Holder*, 10 F. Supp. 3d 165, 168 (D.D.C. 2014) (finding a hold to be discretionary and unreviewable where the application was previously denied for inadmissibility, "the only ground(s) for referral or denial [was] terrorist-related inadmissibility," and new exemptions were anticipated). Of note, the retrogression hold policy operates in a substantially country-neutral manner which stands in sharp contrast to the nationality-based trigger here. *Contrast* § 1152(a)(2) ("[T]he total number of immigrant visas made available to natives of any single foreign state . . . may not exceed 7 percent . . . of the total . . . in that fiscal year."), *with* PM-602-0194 at 4 ("Many of these restricted high-risk countries experience widespread corruption, unreliable or fraudulent civil documents and criminal records, and lack effective birth registration systems, which systematically hinder accurate vetting and identity verification."). *See generally Trump v. Hawaii*, 585 U.S. at 695 ("Once § 1182 sets the boundaries of admissibility into the United States, § 1152(a)(1)(A) prohibits discrimination in the allocation of immigrant visas based on nationality and other traits.").

Arguably, the most consequential distinction is that "in the visa retrogression context, applications for adjustment of status are held in abeyance until a condition precedent—availability of visa numbers—is satisfied . . . The adjudicatory hold at issue

here, on the other hand, is indefinite, with no specific condition precedent to be satisfied." *Saghafi*, 2026 WL 1127468, at *4 (citation modified); *Behdin*, 2026 WL 1031079, at *9; *Bowser*, 2026 WL 555624, at *4; *Varniab*, 2026 WL 485490, at *7.  This is confirmed by the policy memoranda which state that the hold will "remain in effect until lifted by the USCIS Director through a subsequent memorandum."  PM-602-0192 at 2–3; PM-602-0194 at 3.  Each also specified that "[w]ithin 90 days of issuance of this memorandum, USCIS [would] prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." PM-602-0192 at 3; PM-602-0194 at 4 n.10, 5 ("Any request for an exemption to the adjudicative hold must be coordinated with the USCIS Office of Policy and Strategy (OP&S). OP&S will track and record all the hold lifts. OP&S will issue additional guidance within 7 days of issuing this memorandum.").  However, "[n]either Policy Memoranda explain[ed] what [would] happen[] with the created list or the nature of any forthcoming operational guidance." *Bowser*, 2026 WL 555624, at *2.  Regardless, "the time within which USCIS said it would issue a 'prioritized list' and 'operational guidance' [has now] passed" and "[i]f it did so, any such list or operational guidance has not been made public or disclosed to the Court." *Behdin*, 2026 WL 1031079, at *17; *Karimi v. Mullin*, No. 5:26-CV-5049, 2026 WL 1103448, at *2 (W.D. Ark. Apr. 23, 2026).  This is further confirmed by the March Update, which states that "USCIS is still in the process of 'developing guidance to help adjudicators align interview resources to specific risks identified for each country.'" *Karimi*, 2026 WL 1103448, at *3 (quoting March Update).  Therefore, unlike the retrogression hold policy which "involve[d] routine processing delays," the issue here is "a formal and indefinite hold on adjudication of applications." *Behdin*, 2026 WL 1031079, at *13; *see* PM-602-0194 at 5 (adding an exception for athletes or team members participating in the Olympics).  Nor is the hold's indefinite nature altered "just because the policy is subject to change . . . In fact, all laws are subject to change . . . The fact that a law may be altered in the future has nothing to do

25-cv-03221-DMS-MMP

with whether it is subject to judicial review at the moment." *Bowser*, 2026 WL 555624, at *5 (citation modified).

These differences point to a deeper distinction which confirms that the hold here does not fall within § 1255 discretion. In their analysis of § 1252(a)(2)(B)(ii), the circuit cases repeatedly referenced the discretion to decide process or procedures. *Kale*, 139 F.4th at 335 ("Thus, the establishment of regulations and *procedures* for managing several competing statutory requirements—including the establishment of the adjudication hold policy—is plainly within the statutory grant of discretion." (emphasis added)); *Kanapuram*, 131 F.4th at 1307 ("In other words, § 1255(a) gives the Department of Homeland Security and USCIS broad discretion to determine and implement the adjudicative *process* for Form I-485 applications, within the bounds set by statute." (emphasis added)); *Geda*, 126 F.4th at 843 ("Section 1255(a) is a classic grant of discretion because it provides the Secretary discretion over not only the final decision but the entire *process* for reaching that decision." (emphasis added)); *Cheejati*, 106 F.4th at 394 ("Section 1255(a) expressly leaves not only the ultimate decision to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General . . . ." (emphasis omitted)); *Thigulla*, 94 F.4th at 776 ("The text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment *process* under § 1255(a)" (emphasis added)). However, the hold at issue here is not the "establish[ment] [of] the process" for adjustment of status—it is the refusal to engage in the process at all. *Babaria*, 87 F.4th at 977 ("Congress expressly manifested its intent that the government regulate the *process* by which status will be adjusted except for § 1255(a)'s three prerequisites." (citation modified) (emphasis added)); *see Bowser*, 2026 WL 555624, at *3 ("[Plaintiffs] do not contest the adjudication of their applications to adjust status or for employment authorization; instead, they seek review of the *failure to adjudicate* the application."); *Saghafi*, 2026 WL 1127468, at *4 ("Plaintiffs, however, do

25-cv-03221-DMS-MMP

not seek review of USCIS's ultimate decision on their Forms I-485; they seek review of USCIS's decision *not* to adjudicate their applications at all."); *Doe v. Trump,* 2026 WL 1170971, at *8–10 ("Nothing in Section 1255(a) or any other provision of the INA specifies that USCIS has discretion to cease adjudicating adjustment of status applications altogether . . . ."); *cf. Gupta*, 118 F.4th at 483 (construing the retrogression hold policy as a "constraint[] on the process" of adjusting status). Therefore, as the hold here is not a part of the adjudication process, it falls outside the scope of § 1255 discretion.

This is further supported by the reasoning in *Kucana* that "any other decision" in § 1252(a)(2)(B)(ii) "suggests that Congress had in mind decisions of the same genre" as those listed in subsection (i). 558 U.S. at 246–47; *see* § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title."). The "decisions Congress enumerated in § 1252(a)(2)(B)(i) . . . are substantive decisions made by the Executive in the immigration context . . . and therefore [decisions] shielded from court oversight by § 1252(a)(2)(B)(ii), are of a like kind." *Kucana*, 558 U.S. at 247–48 (citation modified). The *Kucana* Court found a motion to reopen not to be within the scope of § 1252(a)(2)(B)(ii) because it did not "direct the Executive to afford the alien substantive relief" and only concerned "whether the alien's claims ha[d] been accorded a reasonable hearing." *Id.* at 248. Similarly, the question here is not what relief should ultimately be afforded or what exact process USCIS should follow in coming to a decision, but rather whether the agency may refuse to act altogether. Such a refusal does not "reasonably fill[] in a procedural detail left open by Congress" and there is no indication Congress would have considered a categorical hold as part of the statutory scheme. *Babaria*, 87 F.4th at 979. This is evident from the duty to decide, which "becomes no duty at all if it is accompanied by unchecked power to decide when to decide." *See Bahaduri*, 2026 WL 878687, at *5 (citation modified); *Behdin*, 2026 WL 1031079, at *7 ("The problem with Defendant's argument is that he concedes that USCIS has a duty to act on applications for employment authorization within a reasonable time . . . , but the Policy Memoranda impose an indefinite hold on the

adjudication of such applications."); *Bowser*, 2026 WL 555624, at \*4 ("A panoply of courts have found that while it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." (citation modified)).

Moreover, even retrogression hold policy cases distinguish between the pace of adjudication and inaction. *Kale*, 139 F.4th at 335 ("[A]gency *inaction* is not to be conflated with *action*."); *Behdin*, 2026 WL 1031079, at \*11 (observing that district court retrogression hold policy cases distinguished between slow-paced processing and refusal to adjudicate) (first citing *Khachutorov*, 792 F. Supp. 3d 1106; and then citing *Mohsenzadeh*, 276 F. Supp. 3d 1007); *cf. Kanapuram*, 131 F.4th at 1308 (explaining that "§ 1255(a)'s commitment of status adjustments to agency discretion [does not] necessarily constitute[] a blanket bar on all legal challenges"). Ultimately, the Court is persuaded that even if the Ninth Circuit were to follow the circuit consensus, "there is a difference between the agency's discretion over *how* to resolve an application and the agency's discretion over *whether* it resolves an application." *Behdin*, 2026 WL 1031079, at \*12 (citation modified) (quoting *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007)); *see Babaria*, 87 F.4th at 977 (characterizing the retrogression hold policy as "a *mechanical requirement*" which affects "*timing*" (citation modified)); *Gupta*, 118 F.4th at 483 (noting that the retrogression hold policy "only concerns *when* . . . an application will be adjudicated." (emphasis added)).

Furthermore, reading § 1252(a)(2)(B)(ii) to reach the hold here would allow for a result the Supreme Court has cautioned against. "[A] paramount factor in the [*Kucana*] decision" was that interpreting § 1252(a)(2)(B)(ii) to extend past statutory discretion would have allowed the Executive Branch "to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'" 558 U.S. at 252. Defendants' position asks for something even broader: sheltering a categorical and indefinite hold on required action through policy memoranda that themselves disclaim the creation of any legally enforceable rights. *See* PM-602-0192

at 4 ("This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties . . . [and] may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner."); PM-602-0194 at 5 (same). "Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted." *Kucana*, 558 U.S. at 252. "Any lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) [is] dispelled by a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Id.* at 251. Even the "explicit and expansive jurisdiction-stripping wording in § 1252(a)(2)(B)(ii)" only precludes "*most* judicial review" and only within "the discretionary-relief context." *Chairez*, 168 F.4th at 1232 (emphasis added) (quoting *Patel v. Garland*, 596 U.S. at 347). Here, there is no clear and convincing evidence that Congress intended § 1252(a)(2)(B)(ii) to bar review of a categorical, nationality-based, and indefinite hold on the adjudication of matters presented to it. *Cf. Babaria*, 87 F.4th at 979 (explaining that Congress had acquiesced to the regulation underlying the retrogression hold policy for over fifty years despite amending § 1255 "on numerous other occasions"). As such, the "well-settled and strong presumption" eliminates any remaining uncertainty. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020).

Finally, the Court notes that as Plaintiff's application was submitted under the Cuban Adjustment Act, there is an open question as to whether § 1252(a)(2)(B)(ii) even applies. (*See* Compl. ¶ 1); Cuban Adjustment Act (Cuban Refugee Adjustment Act), Pub. L. No. 89-732, 80 Stat. 1161.[8] This is because the Cuban Adjustment Act ("CAA"), passed in 1966, has the "somewhat anomalous status" of having been "codified in the U.S. Code as a 'historical note' to § 1255." *Daniel v. Castro*, 662 F. App'x 645, 648 (11th Cir. 2016).

---

[8] As the Cuban Adjustment Act is not subject to a visa cap, Plaintiff's application would not be subject to the retrogression hold policy in any event. *Cf. Bowser*, 2026 WL 555624, at *4 ("The issue of visa availability upon adjudication does not exist here.").

25

As it is unclear whether Congress itself made or authorized this decision, "it remains equally unclear [whether] the presence of the CAA following section 1255(a) was intended by Congress to indicate that the CAA should be read as part of the INA." *Baez v. United States*, 715 F. Supp. 2d 1165, 1178 (D. Or. 2010). Therefore, adjustment of status under the CAA might not meet § 1252(a)(2)(B)(ii)'s "under this subchapter" requirement. The Eleventh Circuit previously found that the CAA was not subject to § 1252(a)(2)(B)(i) but has twice declined to reach the same question as to § 1252(a)(2)(B)(ii). *See Perez v. USCIS*, 774 F.3d 960, 967–68 (11th Cir. 2014) ("The first sentence of the CAA supports this conclusion . . . [by] explaining its provisions apply notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act . . . ." (citation modified)); *Garriga v. Hackbarth*, 548 F. App'x 559, 561 (11th Cir. 2013); *Daniel*, 662 F. App'x at 648–49. Although no other circuit court has addressed the question, the Board of Immigration Appeals "has held the CAA is not part of § 1255." *Perez*, 774 F.3d at 967 (citing *In re Artigas*, 23 I. & N. Dec. 99, 104–06 (B.I.A. 2001) (en banc), *superseded on other grounds as recognized in Matter of Martinez-Montalvo*, 24 I. & N. Dec. 778, 783 (B.I.A. 2009)). Although this produces a colorable argument that Plaintiff's application is not subject to § 1252(a)(2)(B)(ii) in the first place, the Court finds jurisdiction regardless and thus declines to address that open question here.

### B. Mandamus Act

Plaintiff brings a mandamus claim to compel USCIS to adjudicate his pending adjustment application. (*See* Compl. 13). The Mandamus Act gives district courts jurisdiction over actions "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997)). However,

25-cv-03221-DMS-MMP

"because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (citation modified). Here, Plaintiff seeks the same relief under both statutes. (Compl. ¶¶ 33–34). As the APA authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed," there is an adequate remedy. 5 U.S.C. § 706(1). Accordingly, the Court analyzes Plaintiff's claims under the framework of the APA.

### C. Administrative Procedure Act

Plaintiff alleges that USCIS's failure to adjudicate his application amounts to "agency action unlawfully withheld or unreasonably delayed" under the APA. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiff meets the discrete action condition because he is asking USCIS to adjudicate a single, identifiable application rather than bringing a "broad programmatic attack" which is not an "agency action" at all. *Id.* Plaintiff meets the required action condition because "there is no dispute the APA requires government agencies to conclude matters presented to them." *Aldurra v. U.S. Dep't of State*, No. 25cv1322 DMS (DEB), 2026 WL 63471, at *2 (S.D. Cal. Jan. 8, 2026) (citing 5 U.S.C. § 555(b)); *cf. In re A Cmty. Voice*, 878 F.3d 779, 784–85 (9th Cir. 2017) (finding that § 555(b) required the EPA "to reach some final decision" on an accepted petition because "an agency cannot simply refuse to exercise its discretion to conclude a matter" (citation modified)); *Rahman v. Holder*, 434 F. App'x 651, 651 (9th Cir. 2011) (citing § 555(b) as the source of the duty to adjudicate asylum applications). Courts have widely recognized the duty to adjudicate adjustment applications as supported by various statutory and regulatory provisions. *See, e.g.*, *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1166–67 (N.D. Cal. 2007) (concluding that the specific requirements for "withholding adjudication" in 8 C.F.R. § 103.2(b)(18) indicate that absent compliance, USCIS has a nondiscretionary duty

27

to act upon benefit applications); *Wu v. Chertoff*, No. C 06-07880 SI, 2007 WL 1223858, at *3 (N.D. Cal. Apr. 25, 2007) (finding the directive that "[t]he applicant shall be notified of the decision" in § 245.2(a)(5)(i) reflects "a clear and certain right" to adjudication of adjustment applications); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1141 (D. Ariz. 2008) (referencing the provision that each applicant "*shall* be interviewed by an immigration officer" in 8 C.F.R. § 245.6 in support of finding a nondiscretionary duty to adjudicate adjustment applications); *Latifi*, 2015 WL 3657860, at *3 (recognizing a duty to adjudicate with the context that "Congress expressed a 'sense' in the INA that 'the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application'" (quoting 8 U.S.C. § 1571(b))).  Defendants urge the Court to follow a decision from the D.C. Circuit, which found that § 555(b) alone could not establish a duty for a consular officer to conclusively adjudicate a previously refused visa application.  (Mot. 12 (citing *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024))).  However, as Defendants acknowledge, the Court recently declined to follow *Karimova* and does so again here.  *See Aldurra*, 2026 WL 63471, at *2 (declining to follow *Karimova* as a non-binding, out-of-circuit, unpublished decision which had not been followed by district courts in that Circuit); *see Mahonak v. Rubio*, No. 8:24-cv-01443-FWS-DFM, 2025 WL 449044, at *14 n.10 (C.D. Cal. Feb. 10, 2025) (adding that *Karimova* primarily relied on the Foreign Affairs Manual which does not have force of law in the Ninth Circuit).  Therefore, the agency is required to take action, and accordingly, Plaintiff's § 706(1) claim satisfies the *Norton* prerequisites.  *See* 542 U.S. at 64.

The APA provides that a "court shall . . . compel agency action unlawfully withheld or unreasonably delayed." § 706(1).  Unlawful withholding of agency action is a "situation where a federal agency refuses to act in disregard of its legal duty to act." *Viet. Veterans of Am. v. CIA*, 811 F.3d 1068, 1079 (9th Cir. 2016) (citation modified).  "If an agency withholds a required action, it violates § 706(1) regardless of its reason for doing so." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1121 (9th Cir. 2025), *cert.*

*granted sub nom.*, *Noem v. Al Otro Lado*, 146 S. Ct. 604 (2025).  By contrast, any delay in agency action "violates § 706(1) only if the delay is unreasonable." *Id.* (citation modified). In determining whether a delay is unreasonable, courts "look to the so-called *TRAC* factors." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)); *see Vaz*, 33 F.4th at 1137. The *TRAC* factors are "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Indep. Min. Co.*, 105 F.3d at 507 n.7 (citation modified).

Here, Plaintiff has alleged both unlawful withholding and unreasonable delay. (Compl. ¶ 32; *see* Opp'n 7–8).  As previously discussed, Plaintiff traces the source of the hold on his application to PM-602-0192. (Opp'n 7).  That hold applies to "pending benefit requests for aliens from countries listed in Presidential Proclamation [] 10949" and "will remain in effect until lifted by the USCIS Director." PM-602-0192 at 1, 2–3. This directive plausibly falls under the definition of unlawful withholding as "a federal agency['s] refus[al] to act in disregard of its legal duty to act." *Viet. Veterans*, 811 F.3d at 1079 (citation modified).  Furthermore, the categorical and indefinite nature of the hold resembles policies the Ninth Circuit recently found to be unlawful withholding in *Al Otro Lado*.  *See* 138 F.4th at 1122 ("[A] wholesale refusal to carry out a mandatory duty . . . cannot be called delay within the meaning of § 706(1).").  Plaintiff's posture differs from the class members in *Al Otro Lado* because his application was accepted and may continue through some processing.  *Compare* PM-602-0194 at 1 n.2 (defining "hold" as allowing "a

25-cv-03221-DMS-MMP

case to proceed through processing, up to final adjudication"), *with Al Otro Lado*, 138 F.4th at 1122 ("[B]order officials turned away noncitizens without taking any steps to keep track of who was being turned away or otherwise allowing them to open asylum applications."). However, a mandatory and indefinite hold leaves Plaintiff in substantially the same position, without the agency having completed the required action. *See Al Otro Lado*, 138 F.4th at 1122 ("When an action is delayed, one expects that, with the passage of time (maybe even an unreasonable amount of time), the action eventually will be completed. By contrast, when an action has been withheld, no amount of waiting can be expected to change the situation."); *see also Varniab*, 2026 WL 485490, at *16 (noting that even though USCIS did not outright refuse benefit applications like in *Al Otro Lado*, it has "failed to explain when and by what criteria a decision will be made to lift the [PM-602-0192] hold"); *Behdin*, 2026 WL 1031079, at *18 (same); *Karimi*, 2026 WL 1103448, at *7 ("The Policy, as applied to [Plaintiff], likely constitutes unlawful withholding . . . ."). Thus, the Court finds that Plaintiff has nudged his unlawful withholding claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Defendants argue that Plaintiff has failed to establish unreasonable delay sufficient to support his claims, having only filed his adjustment application on January 30, 2025. (Mot. 14). Plaintiff counters that he "alleges prolonged and deliberate agency inaction, not routine backlog or ordinary processing delay." (Opp'n 8). As the Court recently covered in *Aldurra*, there is a split among district courts in the Ninth Circuit about whether applying the *TRAC* factors is appropriate at the pleading stage. 2026 WL 63471, at *3 (collecting cases). The Court ultimately agreed that the "fact-intensive" nature of *TRAC* factor analysis often requires looking "beyond the face of [the] complaint" and is thus "inappropriate for resolution on a motion to dismiss." *Mobayen v. Blinken*, 780 F. Supp. 3d 969, 984 (C.D. Cal. 2025); *Gonzalez*, 500 F. Supp. 3d at 1130; *Aldurra*, 2026 WL 63471, at *3. That reasoning applies with equal force here. Accordingly, the Court declines to consider the *TRAC* factors on the present motion.

25-cv-03221-DMS-MMP

## IV. CONCLUSION AND ORDER

For the reasons set out above, the Court **DENIES** Defendants' Motion to Dismiss. Defendants shall file an answer to the Complaint within 21 days of the entry of this Order.

**IT IS SO ORDERED.**

Dated:  May 18, 2026

_____
Hon. Dana M. Sabraw
United States District Judge

25-cv-03221-DMS-MMP